# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| SAMANTHA MIXSOOKE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> PRUDENTIAL LIFE INSURANCE CO., ) <br> ) <br> Defendant, and ) <br> ) <br> KATY R. NUTTALL, ) <br> ) <br> Intervener-Defendant ) <br> ) | 3:12-cv-00170 JWS <br><br> ORDER AND OPINION <br><br> [Re: Motions at Dockets 31 and 32] |

## I. MOTIONS PRESENTED

At docket 31, intervener-defendant Katy R. Nuttall ("Nuttall") moves for judgment on the pleadings pursuant to Rule 12(c). Plaintiff Samantha Mixsooke ("Mixsooke") responds at docket 35, and Nuttall replies at docket 41. At docket 32, Mixsooke moves for summary judgment pursuant to Rule 56. The motion is supported with Mixsooke's first declaration at docket 6, two copies of her second declaration at dockets 33 and 36, two declarations by Chadwick B. Jennings at dockets 34 and 37, and various documents authenticated by Mixsooke which are exhibits to her motion at docket 32.

Nuttall's response is at docket 40. Mixsooke's reply is at docket 43. Oral argument was not requested, and it would not assist the court.

## **II. BACKGROUND**

Raymond C.C. Mixsooke ("Raymond") was a member of the armed services at all times pertinent to the case at bar. Raymond married Nuttall on March 29, 2007. While they were married, Raymond obtained a Service Members Group Life Insurance policy ("Policy") with a death benefit of $400,000, and designated Nuttall as the beneficiary on a SGLI Election Form. Raymond and Nuttall's marriage was dissolved on July 24, 2009. Raymond married Mixsooke on September 19, 2011. Raymond was still married to Mixsooke when he died on July 5, 2012. Raymond did not complete another SGLI Election form designating Mixsooke as beneficiary.

Mixsooke sued the Policy's underwriter, Prudential Insurance Company, seeking a declaration that the death benefit should be paid to her. Nuttall was permitted to intervene in the litigation as a defendant. Prudential paid the $400,000 benefit into the court registry and was dismissed. Nuttall's Rule 12(c) motion and Mixsooke's Rule 56 motion are each intended to establish that the movant is entitled to the $400,000 death benefit. Because the court will consider information outside the pleadings in deciding the motions, both will be treated as motions for summary judgment under Rule 56.

## **III. STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[1] The moving party has the burden of

---

[1] Fed. R. Civ. P. 56(a).

showing that there is no genuine dispute as to any material fact.[2] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[3] Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[4] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[5] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[6]

## IV. DISCUSSION

The Policy was issued pursuant the Servicemen's Group Life Insurance Act of 1965 (the "Act"). With respect to such insurance policies, the Supreme Court has held that the Act gives "the service member an absolute right to designate the policy beneficiary."[7] Under the Act, the beneficiary is the person "designated by a writing received prior to death." 38 U.S.C. § 1970(a). The controversy presented revolves primarily around the question of whether actions later taken by Raymond were effective to change the beneficiary from Nuttall to Mixsooke.

Mixsooke relies on Raymond's execution of a record of emergency data form, or Form 93, directing that upon his death all pay, allowances, and death benefits were to

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Id.* at 323-325.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[5] *Id.* at 255.

[6] *Id.* at 248-9.

[7] *Ridgway v. Ridgway,* 454 U.S. 46, 59 (1981).

-3-

be paid to Mixsooke.[8] In *Prudential Ins. Co. v. Smith,*[9] a case relied upon by Mixsooke, the Fifth Circuit held that writings other than a SGLI Election Form, including a Form 93, may be relevant to the determination of the beneficiary's identity. The *Smith* court relied on a Form 93 to determine which of two women the deceased considered to be his wife at the time of death. *Smith* did not involve a situation in which a Form 93 was used in lieu of a SGLI Election Form. Thus, it provides no support for Mixsooke's position beyond the general proposition that in some circumstances a Form 93 should be considered.

Mixsooke also cites *Coomer v. United States.*[10] There, the issue was whether to rely on a document created by a battalion personnel officer and executed by the deceased serviceman which recited that it was meant to designate a SGLI beneficiary. The court approved use of the form. There was no formal SGLI Election Form, so *Coomer* provides no direct guidance for resolution of the dispute at bar.

Mixsooke contends that the district court's decision in *Lanier v. Traub*[11] establishes that Raymond's Form 93, rather than his SGLI Election Form, dictates the outcome in the case at bar. In *Lanier* a Florida district court confronted a dispute between a deceased serviceman's father and stepfather over half the death benefit to be paid under his SGLI policy. A SGLI Election Form and a Form 93 had been executed on the same day. The SGLI Election Form indicated that the SGLI benefits were to be distributed as provided "by law," while the Form 93 indicated that pay,

---

[8] While Mixsooke was specifically named as the recipient of unpaid pay and allowances, the form 93 provided that the recipient of any "death gratuity" was to be determined by law. Doc. 32, Ex. 6. As Raymond's widow, Mixsooke is the person determined "by law." Neither party expressly addresses whether the term "death gratuity" is broad enough to include a SGLI life insurance benefit. For purposes of the pending motions, the court assumes that it is.

[9] 762 F.2d 476, 481 (5th Cir. 1985).

[10] 471 F.2d 1 (5th Cir. 1973).

[11] 734 F.Supp. 463 (S.D. Fla. 1990).

-4-

allowances, and any death benefits were to be paid one-half to the serviceman's mother and one-half to his stepfather. The district court enforced the Form 93 distribution on the grounds that it more clearly expressed the serviceman's intent. On appeal the Eleventh Circuit reversed, because a stepfather is not a parent within the meaning of the relevant federal statute, and so the "by law" election in the SGLI Election Form meant the father, not the stepfather, shared the benefit with the mother.[12] The appellate court pointedly eschewed involvement in attempts to ascertain a decedent's intent. The appellate holding establishes that the district court erred when it relied on the Form 93, rather than the contemporaneous SGLI Election Form. Having been reversed, the district court's decision in *Lanier* cannot support Mixsooke's position.

Mixsooke relies on the fact that Raymond executed a last will and testament on December 21, 2011, in which he left all of his property to Mixsooke. The will was prepared and executed pursuant to federal law applicable to military personnel. Mixsooke contends that the failure to update the SGLI Election form at that time was an oversight. Nuttall responds that the will is not a document recognized by the statutes and regulations applicable to SGLI policies for the purpose of designating or re-designating the policy beneficiary. In the court's view this assertion is too broad. What is required is a written designation delivered to the military prior to death. On the other hand, the will in question does not include a designation of Raymond's SGLI beneficiary. This point is underscored by the fact that, as Nuttall argues, following Raymond's death, the Report of Casualty (Form 1300) stated that at the time of Raymond's death, his SGLI beneficiary was his former spouse, Nuttall.[13]

Mixsooke contends that, unlike Nuttall, she has offered evidence that at the time of his death, Raymond intended that the SGLI benefits go to Mixsooke. The evidence to which Mixsooke points consists of the Form 93, Raymond's will–matters addressed

---

[12]*Lanier v. Traub*, 934 F.2d 287 (11th Cir. 1991).

[13]*See* docket 32, Ex. 2.

above–and the declarations of Mixsooke and Raymond's friend, Chadwick B. Jennings.[14] The flaw in this argument is that the evidence advanced by Mixsooke–what Raymond showed her about how she was to allocate the SGLI benefit in the event of his death–and Jennings's opinion that Raymond wanted the SGLI benefit to go to Mixsooke is inadmissible hearsay.[15]

Mixsooke makes a very strained argument to the effect that a marginal notation beside Nuttal's name on the SGLI Election Form, which reads "wife name and address," somehow establishes that the form effectively designates whoever might be Raymond's wife at the time of his death as the beneficiary. Regardless whether the marginal note was written by Raymond or by someone helping him fill out the form, it is plainly a reference to what appears in the blanks on the form; to wit, Nuttall's name and address.

Finally, Mixsooke contends that because the Act was amended in 2005 to require that the Secretary give notice to a spouse when a serviceman designates a SGLI beneficiary other than his spouse, coupled with her averment that she received no such notification, somehow voids the SGLI Election Form that Raymond executed. The flaw in this argument is that when Raymond executed the form, he did designate his spouse, Nuttall. The court does not read the notification provision to require the Secretary to keep track of a serviceman's marital status and send out notices any time there is a marriage subsequent to the execution of the SGLI Election Form.

---

[14]Mixsooke's first declaration is at doc. 6, and two copies of her second declaration are at dockets 33 and 36. Jennings's declaration was filed twice at dockets 34 and 37.

[15]Fed. R. Evid. 801. Moreover, none of the specific exceptions to the admission of hearsay applies. The "catch-all" exception in Rule 807 does not apply, because whatever Raymond told Mixsooke or led to the formation of Jennings's opinion was not made in circumstances comparable to those which may be said to guarantee the accuracy of statements admissible under one of the specific exceptions to the hearsay rule.

For her part, Nuttall relies on the SGLI Election Form executed by Raymond and on the Supreme Court's decision in *Ridgway v. Ridgway*.[16] There, sergeant Richard Ridgway, a career serviceman, had divorced his wife April with whom he had three children. The state court divorce decree obligated Richard to maintain his SGLI life insurance policy for the benefit of April and the three minor children. Four months after the divorce, Richard married Donna. Six days later he executed a SGLI Election Form providing that his beneficiary would be determined as provided by law. When he died the beneficiary determined by law was his widow Donna. April sued to enforce a constructive trust imposed to effectuate the state court divorce decree. The trial court declined to enforce a constructive trust on the basis that to do so would violate the Constitution's Supremacy Clause, because the trust would conflict with the SGLI designation created pursuant to federal law. On appeal the Supreme Judicial Court of Maine reversed, holding that Donna held the life insurance proceeds subject to a constructive trust in favor of April and the children. In turn, the Supreme Court reversed the Maine appellate court on the basis that its decision ran afoul of the careful scheme established by Congress to provide servicemen an opportunity to obtain insurance and to control the designation of the beneficiary. Mixsooke points out that in the case at bar she does not rely on a constructive trust created by state law and so contends that *Ridgway* is inapposite. *Ridgway* is not on all fours with the dispute at bar. Nevertheless, it may be noted that the *Ridgway* court enforced a SGLI Election Form in circumstances where the competing claimant was a very sympathetic party with substantial equity on her side.

Neither party has cited any Ninth Circuit case to support her position, and the court has found none. The case closest to the dispute at bar is the appellate decision in *Lanier*. That case is distinguishable because the competing SGLI Designation Form and Form 93 were executed on the same day, as contrasted with the situation in the

---

[16] 454 U.S. 46 (1981).

case at bar.  Nevertheless, in the absence of any closer authority, this court determines that the *Lanier* court's decision not to engage in inquiries about the actual intent of a deceased serviceman in order to escape the result a straight forward application of a properly executed SGLI Election Form is inconsistent with federal law provides the best guidance for resolution of the instant dispute.  Moreover, while inferences may be drawn from the remarriage, the will and the Form 93, which put Mixsooke in a sympathetic light, the *Ridgway* decision counsels against reliance on such a consideration.

## V.  CONCLUSION

Based on the preceding discussion, Nuttall's motion at docket 31 is **GRANTED**, and Mixsooke's motion at docket 32 is **DENIED**.  The clerk will please enter judgment accordingly.

DATED this 15th day of February 2013.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE